NATIONAL – SIMPLEX – BLUDWORTH, Inc., Henry Hughes & Son, Limited, and Kelvin & Hughes, Limited, Plaintiffs,

v.

Robert H. PROTHERO and Mary E. Prothero, his wife, doing business as Prothero Boat Co., Defendants.

No. 3159.

United States District Court, W. D. Washington, N. D.

Dec. 29, 1954.

As Amended Jan. 10, 1955.

W. Brown Morton (of Pennie, Edmonds, Morton, Barrows & Taylor), New York City, and Paul Ashley, Seattle, Wash., for plaintiffs.

Louis Granger and Bruce Krost (of Woodling & Krost), Cleveland, Ohio, and Frank Preston, Seattle, Wash., for defendants.

MURRAY, District Judge.

This cause came on regularly for trial before the Court, sitting without a jury, on the 29th and 30th days of September, 1954; that the parties, by written stipulation dated and approved by the Court May 6, 1954, agreed that the issues to be tried in this case are, as set forth in said stipulation, as follows:

A. The validity of U. S. Letters Patent No. 2,076,330, issued April 6, 1937, to Henry Hughes & Son, Limited, a corporation of Great Britain, as assignee of the inventors, A. B. Wood, F. D. Smith, and J. A. McGeachy, and particularly Claim 4 of said Letters Patent;

B. Whether or not the sale and/or use of the device exemplified by plaintiffs' Exhibit 1 of this pretrial stipulation and submitted herewith infringes Claim 4 of the aforesaid patent;

C. Whether or not the plaintiffs own complete title to U. S. Letters Patent No. 2,076,330 and possess the right to sue for infringement thereof, and if so, which plaintiff or plaintiffs own such title and possess such right.

It was further agreed between the parties in said stipulation that the questions of damages, legally sufficient notice of infringement to defendants and compliance by plaintiff with the marking statute, 35 U.S.C.A. § 287, and its predecessor statutes be deferred until after the trial; thereupon oral and documentary evidence and stipulations were introduced by and on behalf of each of the parties, and at the close of all of the evidence the parties rested, and thereafter, within the time granted by the Court, each of the parties filed their briefs, and the cause was then submitted to the Court for its consideration and decision, and the Court having considered all of the evidence and testimony submitted at the trial of the cause, the stipulations of parties, and the admissions contained in the pleadings, and the briefs of counsel, and being fully advised in the premises, now makes and orders filed its Findings of Fact and Conclusions of Law as follows:

## Findings of Fact

### I

That plaintiff National-Simplex-Bludworth, Inc., is a corporation duly organized and existing, that the plaintiff Henry Hughes & Son, Limited, is a corporation duly organized and existing, and that plaintiff Kelvin & Hughes, Limited, is a corporation duly organized and existing.

### II

That the defendants Robert H. Prothero and Mary E. Prothero, his wife, are individuals doing business under the name and style of Prothero Boat Co., and have a regular and established place of business at 2046 Westlake Ave. No., Seattle, Washington; that the defendants Robert H. Prothero and Mary E. Prothero are husband and wife and as such constitute a marital community, and that the defendant Robert H. Prothero in all things mentioned herein was acting for and on behalf of himself and this marital community.

### III

That this is a suit arising under the patent laws of the United States.

### IV

That on April 6, 1937, U. S. Letters Patent No. 2,076,330 were issued to plaintiff Henry Hughes & Son, Limited, as the assignee of the inventors Albert Beaumont Wood, Frederick Daniel Smith, and James Andrew McGeachy, for an invention of apparatus for the measurement of distances by echo reception methods. That by an agreement dated April 17, 1940, said Henry Hughes & Son, Limited, granted to International Projector Corporation an exclusive license under the said U. S. Letters Patent above mentioned to manufacture, use, exercise and vend in the United States of America the device covered by said patent, except the component part of an echo sounder called a receiving and transmitting oscillator. That there is no evidence before the Court that the said

plaintiff Henry Hughes & Son, Limited, has ever divested itself of any other legal or equitable interest in said patent than the license to International Projector Corporation hereinbefore mentioned, and the Court finds from the evidence before it that the plaintiff Henry Hughes & Son, Limited, is the sole owner of the legal title to said U. S. Letters Patent.

## V

That there is no evidence before the Court from which the Court can find that the plaintiff Kelvin & Hughes, Limited, owns any interest, legal or equitable, or otherwise, in said U. S. Letters Patent No. 2,076,330, or any proceeds derived therefrom.

## VI

That there is no evidence before the Court from which the Court can find that the plaintiff National-Simplex-Bludworth, Inc., owns any interest, legal or equitable, or otherwise, in said U. S. Letters Patent No. 2,076,330, or any proceeds derived therefrom.

## VII

That defendants Robert H. Prothero and Mary E. Prothero, his wife, doing business under the name and style of Prothero Boat Co., at 2046 Westlake Ave. No., Seattle, Washington, sold the device, referred to in this trial as plaintiffs' Exhibit 1, which is alleged to have infringed the U. S. Letters Patent above referred to.

## VIII

That Claim 4 of said U. S. Letters Patent, which by agreement of the parties is the only claim of said patent in issue in this case, reads as follows:

"4. A transmitting member for use in apparatus for the measurement of distance by echo reception, comprising a tubular core of ring form laminations of magnetostrictive material disposed so that they vibrate in a direction transverse to the axis of the core, a support for said core and sound insulating means on said support to prevent the emission of sound waves from the inner curved face and one end of the core, a reflector co-axial with the core and support and in sound reflecting relation to the outer curved surface of the core, and a liquid within said reflector."

## IX

That said Claim 4 discloses a new combination of component parts that were previously known in the field of sound and echo reception; that neither the Hayes patent, No. 1,985,251, nor any of the other patents introduced by the defendants disclose the same combination of component parts as Claim 4 of the patent in suit, and that said Claim 4 of said patent is valid.

## X

That the device above referred to as plaintiffs' Exhibit 1, sold by the defendants, does not infringe upon Claim 4 of the patent in suit for the following reasons:

1. Plaintiffs' Exhibit 1 is a receiving oscillator and not a "transmitting member" as specified in Claim 4 of the patent in suit.

2. That while, with some modification, the accused device, plaintiffs' Exhibit 1, might be used as a transmitting member, it does not contain "sound insulating means on the support to prevent the emission of sound waves from the inner curved face and one end of the core", as specified in said Claim 4 of the patent in suit, nor does it contain any equivalent of said sound insulating means.

From the foregoing Findings of Fact the Court draws the following.

### Conclusions of Law

## I

That this Court has jurisdiction hereof.

## II

That the plaintiff Henry Hughes & Son, Limited, is the proper party plaintiff and has the right to maintain this action.

### III

That plaintiffs Kelvin & Hughes, Limited, and National-Simplex-Bludworth, Inc., are not proper parties plaintiffs and should be dismissed from said action.

### IV

That U. S. Letters Patent No. 2,076,330 was duly and regularly issued to the plaintiff Henry Hughes & Son, Limited, and that Claim 4 thereof is valid.

### V

That there has been no infringement of said Claim 4 of U. S. Letters Patent No. 2,076,330 by the defendants.

Let judgment be entered accordingly, with costs to defendants.

### Memorandum

In connection with the Findings of Fact and Conclusions of Law filed this date in this cause, the Court has the following comments to make with reference to the said Findings of Fact and Conclusions of Law.

With regard to the question of the title to the patent and the right of the various plaintiffs to maintain this action, while there were some suggestions in the trial memorandum of the plaintiff, and orally, that the plaintiffs National-Simplex-Bludworth, Inc., and Kelvin & Hughes, Limited, have certain rights under the patent, there was no evidence introduced to prove that this was so. Plaintiffs' Exhibit 2, being the patent, shows on its face that it was issued to the plaintiff Henry Hughes & Son, Limited, and from the authorities which the Court was able to find, it appears that the issuance of a patent to a person prima facie entitles that person to maintain an action for its infringement.

The only evidence in the case bearing upon title to the patent, other than the patent itself, was plaintiffs' Exhibit 5, the agreement dated April 17, 1940, between Henry Hughes & Son, Limited, and International Projector Corporation, and plaintiffs' Exhibit 4, the agreement dated August 1, 1950, between Kelvin & Hughes, Limited, National-Simplex-Bludworth, Inc., and International Projector Corporation. By the first agreement Henry Hughes & Son, Limited, granted a license under various patents, including the one in suit, to International Projector Corporation. Henry Hughes & Son, Limited, excepted from that license the component part of an echo sounder called a receiving and transmitting oscillator covered by the patent in suit (thus International Projector Corporation is a mere licensee and not a necessary party to a suit for infringement of the patent). Exhibit 4, dated August 1, 1950, purports to cancel the previous agreement of April 17, 1940, but Henry Hughes & Son, Limited, is not a party to the 1950 agreement, hence it cannot operate to cancel the prior agreement. By the 1950 agreement, Kelvin & Hughes, Limited, purports to grant certain rights in the patent in suit to National-Simplex-Bludworth, Inc., but there is no evidence that discloses any right in Kelvin & Hughes, Limited, to grant an interest in the patent. The record is devoid of evidence showing the transfer of any interest to Kelvin & Hughes, Limited, which would either permit them to sue for an infringement or to grant to National-Simplex-Bludworth, Inc., any rights under the patent. It therefore appeared to the Court that neither Kelvin & Hughes, Limited, nor National-Simplex-Bludworth, Inc., have any standing at all to sue for an infringement of the patent in suit.

There is one other problem in connection with the capacity of all the plaintiffs to sue. While the complaint alleges the corporate existence and capacity of each of the plaintiffs, and the defendants in their answer deny any information or knowledge as to the corporate existence of the plaintiffs, there was no proof introduced with reference to the incorporation and existence as a corporation of any of the parties plaintiff. However, the written stipulation entered into by the parties in paragraph 2 thereof agrees that the Court has jurisdiction of the subject matter of this action and of the parties thereto. Further, the stipulation

specifies the issues to be determined upon the present trial and those reserved for later determination, and in neither category is the issue of the corporate capacity or existence of plaintiffs found. The Court, therefore, construes this stipulation as at least an admission of the corporate existence of the parties plaintiff.

■■ With reference to the validity of Claim 4, in the first place the issuance of the letters patent is prima facie evidence of its validity. Cantrell v. Wallick, 117 U.S. 689, 6 S.Ct. 970, 29 L.Ed. 1017; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Bianchi v. Barili, 9 Cir., 168 F.2d 793, 795. This presumption of validity, which arises upon the issuance of the patent, is strengthened when, as in this case, the alleged anticipating patents were considered by the patent office in connection with the patent in suit. Bianchi v. Barili, supra. Furthermore, as stated by Judge Garrecht in his opinion in the Bianchi case, supra, "before a patent can be declared invalid because of anticipation, its lack of novelty must be established beyond a reasonable doubt." (Citing cases.)

■ With the foregoing principles in mind the Court has considered Claim 4 of the patent in suit in connection with the prior patents introduced by defendants, and from such examination is not convinced of the lack of novelty of Claim 4 of the Wood patent. While various of the elements or component parts of Claim 4 are found in the prior patents introduced by defendants, such as magnetostrictive core in the German patent No. 449,982 to Gerdien and in Pierce No. 2,014,411, the Court cannot find that any of the patents anticipated entirely the device described in Claim 4 of the patent in suit. Furthermore, the Hayes patent No. 1,985,251, which defendants contend discloses all of the features disclosed by Claim 4 of the patent in suit, was before the patent office at the time they issued the Wood patent. In deciding

that Claim 4 was valid, the Court was likewise influenced by the utility and commercial success shown by the evidence to have been enjoyed by the device manufactured under the patent. As stated in 40 Am.Jur., Section 40, page 557, "utility is evidence of invention and may be decisive in doubtful cases. And so the fact that the alleged invention has been generally adopted and has displaced other devices may be sufficient to turn the scale in its favor."

In short, while the Court does find various elements disclosed by Claim 4 in the prior art, the Court is unable to say that the prior art discloses the precise combination of elements that Claim 4 of the patent in suit calls for, and is influenced in holding Claim 4 to be valid by the circumstances existing in the patent office at the time of the issuance of the Wood patent and by the commercial success of the device manufactured under the Wood patent. The following language taken from the opinion of the Supreme Court in Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, at page 435, 31 S.Ct. 444, at page 447, sums up the feeling of this Court with reference to the validity of Claim 4:

"But the law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration. And it recognizes degrees of change, dividing inventions into primary and secondary, and as they are, one or the other, gives a proportionate dominion to its patent grant. In other words, the invention may be broadly new, subjecting all that comes after it to tribute (citing cases); it may be the successor, in a sense, of all that went before, a step only in the march of improvement, and limited, therefore, to its precise form and elements   *   *   *."

It is in the latter sense, that is a successor of all that went before and a step

only in the march of improvement, that the Court feels Claim 4 is valid, and this brings us to the third issue submitted to the Court—infringement.

■ As the Supreme Court pointed out in the above quotation from the Diamond Rubber Co. case, a secondary patent, which the Court holds Claim 4 of the patent in suit to be, is limited to its precise form and elements, and in order for there to be an infringement, every element called for by the claim must be included in the accused device. Prouty and Mears v. Draper, Ruggles & Co., 16 Pet. 336, 41 U.S. 336, 10 L.Ed. 985; Simons v. Davidson Brick Co., 9 Cir., 106 F.2d 518; Burgess Battery Co. v. Coast Insulating Co., 9 Cir., 114 F.2d 779; Gasair Corp. v. Ransome Co., 9 Cir., 140 F.2d 818.

■ A comparison of plaintiffs' Exhibit 1, the device sold by defendants, which is alleged to infringe the patent, even disregarding the fact established by the evidence that plaintiffs' Exhibit 1 is a receiving oscillator and not a transmitting oscillator, as called for by Claim 4, with Claim 4 of the patent reveals the omission in the alleged infringing device of an element specifically called for by the claim, to-wit: "sound insulating means on said support to prevent the emission of sound waves from the inner curved face of the core and from one end of the core". Counsel for plaintiff contends that the brass plate with the small rubber gasket on the bottom of the alleged infringing device is a means to prevent the emission of sound from the inner curved face of the core and one end of the core. The testimony does not bear them out. The testimony discloses that this small brass plate approximately 1/16th of an inch thick would have very little sound insulating effect. It is interesting to note that the device manufactured by plaintiffs, which was introduced in evidence by the plaintiffs as manufactured under the patent, and which the Court finds was so manufactured, also has a brass plate on the bottom, together with a much more substantial rubber gasket

than is found on the brass plate at the bottom of defendants' device, and yet in addition has a sponge rubber sound insulator in the interior of the core, together with a rubber insulator at the opposite end of the core from the brass plate and rubber gasket which prevents the emission of sound from one end of the core as called for by Claim 4 of the patent. A comparison of the sound insulating rubber at the top of the core in plaintiffs' device with the rubber gasket at the bottom of the core on plaintiffs' device shows how little effect, as a sound insulator, the rubber gasket at the bottom would have. The rubber piece used at the top as sound insulation, as called for by the patent, has a hole in the middle for mounting on the support which is approximately 1/2 inch in diameter and fits snugly around the support and effectively prevents any sound being emitted from that end of the core around the support; while the rubber gasket at the bottom of plaintiffs' device has a hole in the center 2½ inches in diameter and which would have no effect whatsoever in preventing the emission of sound from that bottom end of the core around the support. And as noted before the rubber gasket at the bottom of plaintiffs' device, last referred to, is a much more substantial gasket than that found in the defendants' device. It therefore appears to the Court that there is an absolute omission from defendants' device of any sound insulating means to prevent the emission of sound from either the inner curved face of the core or one end of the core as called for by Claim 4, and thus no infringement.

The foregoing comparison of defendants' device with plaintiffs' device is used merely for illustration to show the absence of sound insulating means in defendants' device, and the Court's finding of no infringement is based not on this comparison of the two devices, but upon a comparison of defendants' device with Claim 4 of the patent in suit.

■ Finally, counsel for defendants contend that the bringing of this infringement action was so unwarranted

as to justify an award of reasonable attorney fees to defendants under the provisions of 35 U.S.C.A. § 285. After a consideration of cases cited under the statute, together with all the facts and circumstances of this case, the Court feels that it is not a proper case for the award of attorneys fees.