**GILLEN et al. v. REYNOLDS METALS CO.**
**Civil Action No. 225.**

District Court, D. Delaware.

April 16, 1943.

Collins J. Seitz, of Wilmington, Del., and Ellsworth H. Mosher, and Melvin W. Sandmeyer (Stevens & Davis), both of Washington, D. C., for plaintiffs.

Hugh M. Morris and S. Samuel Arsht (Morris, Steel, Nichols & Arsht), both of Wilmington, Del., and David S. Kane and Philip T. Dalsimer (Duell and Kane), both of New York City, for defendant.

LEAHY, District Judge.

■ Plaintiffs ask damages [1] for contributory infringement of Claim 1 of their patent No. 2,018,061, issued October 22, 1935. The claim relates to the combination of a particular type of transparent pouring lip closure with a "relatively heavy" glass wall milk bottle. Not a milk bottler, defendant did not itself use the combination. However, it is contended and substantially conceded that defendant did manufacture bottle hoods of the type used in the combination, so that it is guilty of contributory infringement if plaintiffs' patent is valid.

Claim 1 claims a combination. It reads, in part: "In combination with a milk bottle of the type having [four elements describing the ordinary milk bottle in most common usage for many years]; a pouring lip closure for covering the said pouring lip [of the bottle] and preventing contamination thereof. * * *" The claim then describes the pouring lip closure in minutiae. It includes a transparent, cellulosic cup held within an inverted annular thin sheet metal cup, which is so made that the central portion of the cellulosic cup is uncovered. After the two are placed on the bottle, the metal cup is collapsed to conform to the shape of the pouring lip, to hold the cellulosic cup in tension, and to depress it substantially within the mouth of the bottle, but not sufficiently to come in contact with the primary paper disk closure of the bottle.

■ I. Obviously, this is not a patent of a milk bottle. Neither is it a patent of a hood closure for a milk bottle. To be found valid, this claim must be sustained as a combination claim. A combination claim is not a claim of the elements but solely of the combination thereof, Rowell v. Lindsay, 113 U.S. 97, 5 S.Ct. 507, 28 L.

---

[1] Plaintiffs seek, in fact, treble damages for defendant's alleged wilful infringement. But no consideration will be given such items, as questions of extent of use and damages properly arise under an accounting only after a patent is found valid. Anchor Hocking Glass Corp. v. White Cap Co., D.C., 47 F.Supp. 451.

Ed. 906; Carter Mach. Co. v. Hanes, 4 Cir., 78 F. 346; St. Louis Car Coupler Co. v. National Malleable Castings Co., 6 Cir., 87 F. 885; Overweight Counterbalance Elevator Co. v. Improved Order of Red Men's Hall Ass'n of San Francisco, 9 Cir., 94 F. 155; Myers v. Hadfield-Penfield Steel Co., 6 Cir., 10 F.2d 56; because elements and subcombinations, which are themselves patentable invention, must be claimed separately and not in combination. Mowry v. Whitney, 14 Wall. 620, 20 L.Ed. 860; Case v. Brown, 2 Wall. 320, 17 L.Ed. 817; Evans v. Kelly, C.C., 13 F. 903; Babcock v. Judd, C.C., 1 F. 408; Larabee v. Cortlan, Fed. Cas. No. 8,084; and Stevens v. Pritchard, Fed. Cas. No. 13,407. In short, to sustain a combination claim, invention must be found not in the elements but in the combination of elements, old or new, to perform a new function or to perform an old function in a new manner.

■ The parties have devoted a trial and many scores of pages in their briefs to the question of whether the hood or pouring lip closure was a patentable invention in the light of the prior art. But the paramount issue here seems to me so simple that its statement is its solution: Did plaintiffs' invention disclose a new combination of elements or a means of performing a new function with an old combination of elements when they combined a pouring lip closure with an ordinary milk bottle. Manifestly, they did not.[2] Claiming as they do that defendant is a contributory infringer because it manufactured and sold one of the elements of the patented combination for use in the combination, plaintiffs can sustain the instant action only by showing that they created a patentable invention by combining a milk bottle with a new kind of hood or bottle closure.

The Supreme Court had before it an exactly analogous situation in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008, where it had to decide whether the seller of certain headings or nipples for automotive lubrication was guilty of contributory infringement of a claim which used such heading or nipple in combination with other old parts. Justice Roberts said: "The invention, if any, which Butler made was an improvement in what he styles in his specifications the 'chuck' and in his claim a 'coupling member'. * * * but we think he did no more than this * * * having hit upon this improvement he did not patent it as such but attempted to claim it in combination with other old elements which performed no new function in his claimed combination. The patent is therefore void as claiming more than the applicant invented."

Similarly here, the invention, if any, which plaintiffs attempted to make was an improvement in the "pouring lip closure". They, too, failed to patent what they had actually invented, but attempted to claim it in combination with other old elements which performed no new function in their claimed combination. I must accordingly hold, as did Justice Roberts, that "the patent is therefore void as claiming more than the applicant invented." In reaching this primary conclusion I disregard, for the moment, the question of whether the closure itself performs any new function. Certainly the claimed combination of the elements—the ordinary milk bottle and the hood or lip closure—does not.

The functions of transparency, protection from foreign substances, depression of the cellulosic cup to attain pressure, are all functions of the closure itself, not of combining the closure with the bottle. All references in the specifications to *combination* are: P. 1, col. 1, line 9, "* * * The closures which have been employed to cover the pouring lip of a milk bottle, in addition to or in *combination* with the paper disc usually inserted inside of the pouring lip have not been satisfactory because * * *"; p. 1, col. 2, line 3, "Fig. 3 is a top view of the closure *combination* of Fig. 1"; p. 1, col. 2, line 27, "By constructing the pouring lip in this manner it will most effectively receive the *combined* transparent cellulosic closure and metal ring"; p. 1, col. 2, line 31, "The *combined* transparent cup and the metallic annular closure are shown assembled with the milk bottle in Figs. 1, 2, and 3"; p. 2, col. 1,

---

[2] Indeed, a recital in the specifications of the patent demonstrates that the combination of a closure with a milk bottle was old; e. g., "As a general rule, however, the closures which have been employed to cover the pouring lip of a milk bottle, in addition to or in combination with the paper disc usually inserted inside of the pouring lip have not been satisfactory because of the difficulty of removing them and because of the fact that they would often break during transit, distribution and storage. * * *" P. 2, line 10–16.

line 3 "The *combination* as shown in Fig. 4[3] may be positioned directly upon the top of the milk bottle"; p. 2, col. 2, line 18, "The entire *combination* 21-22[4] may then be readily removed."

Oct. 22, 1935. G. M. GILLEN ET AL. 2,018,061
BOTTLE CLOSURE
Filed Dec. 8, 1933

Fig.1.
Fig.3.
Fig.2.
Fig.4.

INVENTORS
GEORGE M. GILLEN
WILLIAM HERVEN PACKER
BY Richards & Geier
ATTORNEYS.

This leads me to confess that plaintiffs' approach to this entire matter is inscrutable. Not only throughout the specifications of their patent but also throughout the Patent Office proceedings, as disclosed by the file wrapper, all mention and discussion of the combination is not to (1) a pouring lip closure and (2) a milk bottle, but rather to (a) a cellulosic cup and (b) an inverted annular thin sheet metal cup.

Hence, the combination claimed, as I read the patent, is palpably invalid in that there can be no invention in combining a secondary hood or pouring lip closure with an ordinary milk bottle.

II. If it be said that I have misread and misconstrued the combination claimed by the patentees, non constat the completely unambiguous manner in which the claim is directed to the combination of a hood closure with a milk bottle, I do not think my ultimate finding of invalidity should be changed. In this connection, I shall now deal with the question of the validity of the combination of the elements of the hood or pouring lip closure itself by examining its various constituent elements in the light of the prior art.

That portion of Claim 1 which is directed to the hood structure provides that "* * * said closure * * *" is to include:

The Transparent Cap. "* * * a thin transparent inverted cellulosic cup with a horizontal portion extending over the top of the bottle and a skirt portion extending downwardly along the upper side of the bottle * * *".

The Metal Ring. "* * * and an inverted annular thin sheet metal cup outside of and clamping said transparent cup to said pouring lip * * * said metal cup leaving the central portion of the cellulosic cup uncovered whereby the paper closure may be observed therethrough, said metal cup being collapsed to conform to the shape of said pouring lip * * *".

The Depressed Central Portion. "* * * to hold said cellulosic cup in tension and to depress the horizontal portion of said cellulosic cup substantially down within the mouth of the bottle and below the upper portion of said pouring lip * * *" (and)

The Means for Holding the Ring and Cup Together. "* * * said closure including means to hold said cellulosic cup in predetermined assembled position inside of said metal cup."

*Analysis of the hood structure in Claim 1 over prior teachings:*

(1) Transparency of the hood. Over Huethwohl, No. 978,164 (Dec. 13, 1910), alone, plaintiffs' structure may be said to lack invention. Huethwohl called for a cup fitting over the top of a bottle and held in place by means of an annular metal fastening ring which had a central opening. Ehmann, No. 1,675,170 (June 28, 1928), recognized the desirability of looking through the hood cap to the primary paper disc. He states: "The paper disks ordinarily used as caps on milk bottles usually have printed thereon the name of the dairy or distributor and the date on which the milk was Pasteurized. When the cap of the invention is used, this data may be printed on the top portion 10 of the cap, or the cap may be made of transparent rubber and a printed paper disk may be applied to the bottle in the ordinary way

---

[3] Fig. 4 shows only the metallic and cellulosic cups.

[4] 21 is the transparent cup; 22 is the metallic annular closure.

beneath the rubber cap, the printing on the disk, of course, being easily readable through the top of the cap." P. 1, col. 2, line 79 et seq. Bridge, No. 1,957,441 (May 8, 1934) also stated: "Another object of my invention, therefore, is to provide a hood cap of transparent material and so place it on the bottle or other vessel that the primary sealing disk, which is located in the mouth of the vessel and which normally carries the label matter, may be readable through the hood cap." P. 1, col. 1, line 44 et seq.[5]

I find it is neither new structure nor invention to make Huethwohl's inverted cup or hood transparent, as such transparent closures were, as shown, known to the art.

(2) The thin metal ring. Here, again, Huethwohl represents a ring or annular piece of thin sheet metal of a diameter to fit outside the neck of the bottle.[6] I am unable to appreciate the distinction urged by plaintiffs that Huethwohl's metal ring holding the secondary closure in position is snapped on the bottle neck while plaintiffs' metal cup is to be collapsed on to the bottle.

Functional purpose is the same. Both use "thin sheet metal" to fix the hood to the pouring lip. Certainly, this cannot amount to a patentable difference.[7] Chausse, No. 1,719,212 (July 2, 1929), showed a sheet of aluminum foil collapsed or pressed around a bottle. In any event, patentability can not be based on making the metal ring thinner and thus using a spun on instead of a snap closure fastening ring along the pouring lip of the bottle.

(3) The depressed central portion of the hood below the top of the bottle. Patentability of this structure depends on its function "to hold said cellulosic cup in tension and to depress the horizontal portion of said cellulosic cup substantially down within the mouth of the bottle and below the upper portion of said pouring lip * * *". Huethwohl depresses the horizontal portion of the inner cup down within the mouth of the bottle and below the upper portion of the pouring lip.[8] Even old Januchowsky, No. 1,257,709 (Feb. 26, 1918), shows a machine for applying caps which depress the central portion of the

---

[5] Indeed, the Patent Office (First Office Action April 9, 1934) rejected the plaintiffs' claim on the ground that the making of the Huethwohl cup transparent did not constitute invention. The examiner there stated: "No invention is seen in making cap 5 of the reference (Huethwohl, 978,164) of transparent cellulosic material." Exhibit 2, File Wrapper, p. 12. Subsequently, on June 5, 1934, plaintiffs attempted to distinguish Huethwohl on the ground that, as Huethwohl did not show the primary paper disk, he had no need for a transparent hood; but the Examiner, in rejecting the claim, said: "Claims 1–3 inclusive are again rejected as unpatentable over Huethwohl of record. * * * The transparency of applicant's element 21 is not structure but is analogous to printed matter." Id. p. 15. Finally, in a Third Office Action on March 23, 1935, in rejecting the claim once more, the Patent Office said, in part: "It is again noted that the transparency is not material in a consideration of the patentability of the device in as much as it in no way affects the operation of the device nor its efficacy as a closure." Id. p. 19. A personal interview was then had by plaintiffs' attorney with the Examiner. Plaintiffs' attorney at that time stated: "The present amendment is being made pursuant to an interview courteously had with the Examiner in charge of this application, in which it was indicated that claims direct-

ed to the inturned tongues 28 for holding the cellophane cap 21 in position would be allowable over the patents, 800,673 and 978,164. Claim 3 has been amended to broadly point out this feature, and Claim 4 is dependent upon Claim 3 and is specifically directed to providing inturned tongues." Id. p. 20 [Italics mine]. Claims 1 and 2 originally appearing in the application were cancelled so that Claims 3 and 4, upon allowance, became Claims 1 and 2 of the present patent. It is clear that the Patent Office never retreated from its position that the transparency of the secondary hood closure did not render such feature patentable.

[6] Both Huethwohl and plaintiffs limit themselves to "thin sheet metal". Plaintiffs' patent, p. 2, col. 2, line 14. Huethwohl, p. 1, col. 2, line 107.

[7] In the first Office Action (April 9, 1934) in finding such a change did not constitute invention, it was said: "No invention is seen in using a spun on instead of a snap closure fastening ring." Exhibit 2, File Wrapper, p. 19. Later, in stating that invention could not be predicated in making Huethwohl's metal ring thinner, the Examiner commented: "No invention is seen in making Huethwohl's metal cap retaining element frangible. * * *" Id. p. 19.

[8] Cf. his Fig. 3 and p. 1, col. 2, line 89 of his specifications.

hood below the top of the bottle, and if tension and drawing action were a problem he certainly solved it by disclosing depression of the cap while its sides or flanges are being pressed into position.[9]

(4) Lastly, use of "means" for holding the metal ring and transparent cup. The question here is whether plaintiffs' "means" constitute an advance for holding the inner cup of the hood closure and the outer ring together as a unit prior to application to the bottle. While plaintiffs merely state that closure includes "means to hold said cellulosic cup in predetermined assembled position inside of said metal cup." Huethwohl speaks with more preciseness. He stated: "The construction of the device with the inner and outer numbers having the pendent marginal flanges 8 and 15 contacting and the outer member having the inturned retaining tongues 16, insures a secure connection between the parts and prevents their separation, thereby permitting the members to be connected in manufacture. * * *" Id., p. 2, col. 2, line 97.

The Patent Office in granting plaintiffs' Claim 1 failed to recognize that Huethwohl had disclosed "means" for holding the two elements of the hood closure together. This failure was undoubtedly due to an amendment filed by plaintiffs (June 5, 1934) which stated: "In the Huethwohl patent apparently the paper cover 5 and the metal lip 11 must be separately applied to the bottle and they are not handled as single units as in the present application." Exhibit 2, File Wrapper, p. 14. Whereas Huethwohl had made full disclosure of tongues holding the two closures together so that they might be applied as a unit, in the next Action the Examiner stated: "Claims 1-3 inclusive are additionally rejected as unpatentable over Huethwohl of record. *No invention is seen in combining the two elements of Huethwohl together so they can be handled as a unit.*" Id. p. 15. (Italics added.) Yet, this is one of the primary bases of invention claimed by plaintiffs. It is inexplicable why, after an interview with the Examiner and plaintiffs' attorney's statement that "the present amendment is being made pursuant to an interview courteously had with the Examiner in charge of this application in which it was indicated *that claims directed to the inturned tongues 28 for holding the*

*cellophane cap 21 in position* would be allowable over the patents 800,673, and 978,164 (Huethwohl)", the claim was allowed except as a result of a misinterpretation of the references.

If in Huethwohl's specific structure, making disclosure of the inner and outer closures in fixed assembled position, there was no invention, as acknowledged by the Examiner, then why on the basis of plaintiffs' last amendment allowed August 22, 1935, did the Patent Office fail to catch this? I conclude it was simply a misinterpretation of the Huethwohl reference, because it is obvious the Patent Office had assiduously rejected every other contention of patentability offered by plaintiffs.

 Therefore, I reject plaintiffs' argument that their invention is ·found in a combination of elements so as to produce an entirely new hood closure. I think their improved combination entailed, in the light of the prior art, merely the exercise of ordinary mechanical skill. It was stated in Reckendorfer v. Faber, 92 U.S. 347, 356, 23 L.Ed. 719: "Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable"; and more recently Justice Douglas stated in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 40, 86 L.Ed. 58: "We may concede that the functions performed by Mead's [plaintiffs'] combination were new and useful. But that does not necessarily make the device patentable. Under the statute * * * the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. * * * It has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. * * * That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain." [10]

Tested by these standards, I find that plaintiffs were not entitled to a patent upon a combination of the old elements of the pouring lip hood closure described in their Claim 1, if this was the sub-combination claim they sought.

---

9 See, too, Januchowsky, p. 2, col. 1, line 52; and Kaufman No. 1,124,241 (Jan. 5, 1915), involving a pressed hood cap of aluminum below the surface of the top of the bottle.

10 "The flash of genius" test, recently

Hence, and finally, under either view of what is the combination disclosed in the patent—a combination of a milk bottle, a paper disk stopper, and a hood closure, or, a combination of elements in the hood closure alone—I conclude Claim 1 of plaintiffs' patent invalid.

Findings of fact and conclusions of law in conformity with Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, have been filed herewith.

An appropriate order of dismissal may be submitted.

criticized in Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 7 Cir., 132 F. 2d 812, is no judicial parvenu in the field of patent law. Sixty-three years ago in Densmore v. Scofield, 102 U.S. 375, 26 L.Ed. 214, in construing certain claims to see if they were "within the sphere of what is properly patentable", the Supreme

Court was of opinion that it did not appear "that there was *a flash of thought* by which such a result * * * was reached, or that there was any exercise of the inventive faculty, more or less thoughtful, whereby anything entitled to the protection of a patent was produced."